## No. 1085.

### S. MEYER vs. FLETCHER, WESENBERG & CO. AND SQUAIR.

The bond which intervenors are authorized to furnish under the provisions of Act No. 51 of
1876, to be restored to the possession of property attached, sequestered or provisionally
seized in their hands, is a *forthcoming* bond, designed merely to secure the return of the
property at the final determination of the suit, and under which no personal liability for
the judgment is to be rendered attaches.

Where the condition of the bond has been fulfilled, namely, the property has been surrendered
in the condition in which it was received, the intervenors and their surety are entitled
to be discharged.

APPEAL from the Fifth District Court, Parish of Ouachita. *Rich-
ardson, J.*

*Richardson & Liddell* for Plaintiff and Appellant:

ON MOTION TO DISSOLVE.

1.  Property of a non-resident debtor is not exempt from attachment because he has a place
    of business or a commercial domicile in this State.  10 An. 727.

2.  When the defendants have, in various litigations with plaintiffs, alleged themselves and
    their firm to be non-residents, they will not be permitted to deny the truth of their allega-
    tions, which have been acted on by plaintiffs, in order to dissolve an attachment  They
    are estopped from contradicting their judicial allegations. 30 An. 53; 8 An. 141; 3 R.
    243; 26 An. 705; 10 An. 94; 34 An. 912, 913;  No. 10, Bigelow on Estoppel, 473-9 and 561.

3.  In a suit against an intervenor (who is an absentee) on his bond given to release property
    attached, the action being for a specific amount and based on a contract, authorizes the
    writ of attachment.  1 N. S. 369; 2 N. S. 323; 6 N. S. 564; 2 An. 154; 12 An. 110; 15 An.
    1; 29 An. 88.

4.  The attorney-at-law empowered by his client to collect a debt, having the authority to
    make affidavit to obtain the writ, may sign the attachment bond for his client who is ab-
    sent.  C. P. 245 and 237; 10 An. 35; 6 An. 706 and 4; Craig vs. York, Court of Appeals,
    for East Carroll; C. C. 3000; Bouvier, *verbo* agent.

5.  The authority of an attorney-at-law to sign his client's name to an attachment bond
    cannot be impugned on suggestion.  The presumption is in his favor, and the burden of
    proof on the party alleging the want of authority.  Hennen, Vol. 1, page 150, on presump-
    tion, proof and denial of attorney's authority.  4 R. 23; 10 An. 350.

6.  The writ of attachment as against absentees and non-resident defendants is a means of
    citation used for the purpose of giving the Court jurisdiction, and when the absentee
    reconvenes for damages he waives all formalities in attachment proceedings.  34 An. 963;
    11 R. 326; 4 R. 193; 12 An. 282.

Meyer vs. Fletcher, Wesenberg & Co.

7.  A motion to dissolve an attachment for informalities is waived, if coupled with a recon-
    ventional demand for damages, which is a matter for the merits.

ON THE MERITS.

1.  Act 51, 1876, authorizes the intervenor in attachments, sequestrations and provisional
    seizures, to bond property of which they were in possession, upon giving bond within the
    same delay, with same manner and amount and effect as is now allowed the defendants
    in such suits.
2.  The defendants in attachment suits, to relieve property attached, must give bond in an
    amount exceeding by one-half the value of the property attached; conditioned to satisfy
    such judgment to the value of the property attached as may be rendered.  C. P. 259.
3.  Such bond is a personal obligation which cannot be discharged by the sureties by tender-
    ing back the property or pointing out other property for discussion.  18 La. 58; 1 R. 278;
    10 La. 108; 16 An. 25.
4.  Previous to Act 51, 1876, the court had allowed the intervenor to bond under the theory
    that he was the agent of the true owner, and intervenors were always held to give bond
    to satisfy such judgment as may be rendered against the defendant to the value of the
    property attached, etc.  16 An. 25 and 125; 14 An. 53; 17 An. 314.
5.  When an intervenor has filed his petition, under oath, and obtained the order to be al-
    lowed to bond property attached, and afterwards presents a bond along with the order of
    the court and obtains the property, he will be bound on the bond to the extent of the
    property released, whether he signed or not.  15 An. 465; 11 An. 505.
6.  If the conditions of the bond are wanting or informal, the law will reform it.  32 An.
    38; McClosky vs. Wingfield, and authorities there cited.
7.  The law authorizing a judicial bond forms part of the contract in such bonds.  12 An.
    177 and 720; 20 An. 179.
8.  It is the duty of intervenors to word their bond in conformity to law.  14 An. 53; 15
    An. 465.
9.  It is the business of the surety to see that his principals sign the bond.  11 An. 504.
10. No intervention will be allowed after the property attached has been bonded.  The bond
    is a substitute for the property only as to the plaintiff.  16 An. 35; 28 An. 792; 22 An. 751.
11. The lien on the property attached results from the seizure, and not the law; so when the
    seizure is set aside by bond the lien no longer exists, and all rights are transferred to
    the bond.  Drake on Attachments, Section 277; 18 L. 57; 2 An. 244; 10 An. 49.
12. When the property attached or its proceeds are in the hands of the Sheriff, the seizing
    creditors will be paid in the order of their seizure; but when it has been bonded, creditor
    will be entitled to recover on his bond.  16 An. 25; White et al. vs. Hawkins et al.,
    Wright intervenor.
13. The liability of an intervenor on his bond given to release property attached, is fixed by
    the judgment in favor of plaintiff.  16 An. 25 and 125.
14. The condition of a suspensive appeal bond and a bond given to release property attached,
    differ only in this, the former bond is to satisfy the judgment in full, while the latter is to
    satisfy the judgment to the value of the property attached.  In appeal bonds the law binds
    the principal independently of the bond, which is executed for the purpose of binding the
    surety on the appeal bond.  There is no material distinction.  6 An. 706.
15. The property is released upon the contract of the intervenors to satisfy such judgment as
    may be rendered against the defendant to the value of the property released.
16. When property has been seized under attachment by different creditors, in different par-
    ishes, and in each instance is bonded by the same intervenor, though with different sure-
    ties and on distinct days, after judgment in favor of plaintiff in one parish, the intervenor,
    whose liability is thereby fixed, cannot extinguish it by returning the property bonded to
    the Sheriff of the other parish.
17. The law does not accord to the absentee defendant the right to reconvene for damages

against the resident plaintiff in attachment, unless the demand in reconvention is neces-
sarily connected with or grows out of plaintiff's cause of action.  9 R. 418; 13 An. 507; 24
An. 208; C. P. 375-6.

*Stubbs & Russell* and *Potts & Hudson* for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This is an action, coupled with an attachment, to
recover from the defendants, who are non-residents, the value of mov-
able property of which they obtained possession, as intervenors, in a
suit in which the same had been attached.  The claim rests upon a
bond which the defendants are said to have furnished in the last men-
tioned case.

The defendants took a rule to dissolve the attachment issued in the
present suit, pleaded to the merits and reconvened against the plaintiff.

Exceptions to the right of reconvention were filed and sustained.

The rule to dissolve was made absolute, and judgment was rendered
in favor of plaintiff for the amount of his claim, less that of a prior
seizing creditor, with interest and costs.

Both parties have appealed from this judgment.   The ruling touch-
ing the exceptions is not before us for review.   It has not even been
referred to by the defendants, either in the oral or printed argument.

The defense to the action is, substantially, that the alleged bond is
not the *factum* or deed of the defendants ; that if it be, it is a *forth-
coming* bond, uttered under the provisions of Act 51 of 1876, p. 92, the
sole condition of which was the delivery of the property attached at
the determination of the suit, and that, at the end of the litigation, the
property was actually surrendered to the sheriff, as the legal agent of
the plaintiff, and that this surrender operated the release of the inter-
venors from all responsibility or liability for the possession and keep-
ing of the property *pendente lite.*

We deem it unnecessary to determine whether the bond alleged in
the petition was or not signed by the defendants, as principals, or
whether they are or not estopped from denying that it is their *factum.*

Conceding *arguendo* that the bond is their deed, the question arising
for solution is, whether, under its terms and stipulations, they are
liable for the value of the property which was released from seizure,
on its being furnished.

It is remarkable that, while the plaintiff makes that bond the basis
of his action and annexes it to his petition, he contends that it is illegal
in form and substance and should be reformed, so as to make it con-
tain conditions which were not actually incorporated into it.   In this,
however, he merely repeats the charges which he had preferred against

the same instrument, when he took a rule, afterwards discontinued, on the sheriff, who had accepted it and delivered the property attached, in order to hold him responsible.

Both the plaintiff and the defendants agree that the form of the bond is regulated by the provisions of Act 51 of 1876.

The plaintiff contends that, under the terms of that law which forms part of the bond, it should be read as containing the conditions exacted by the Code of Practice from the defendant in an attachment suit, which are, " that he will satisfy such judgment, to the value of the property attached, as may be rendered against him in the suit pending." Art. 259.

The defendants, on the other hand, insist that under the requirements of the same law, the bond is to be merely a *forthcoming* bond, the object of which is to have the property attached restored to the intervenor, until the final determination of the suit, *when* the possession must cease, in the event of an adverse judgment.

The object of the Act in question was to give to intervenors the right, which they did not previously enjoy by law, of bonding property attached or sequestered, and to prescribe the character of the bond to be given.

The first Section of the Act is to the effect, that in all suits in which property thus seized is in the possession of one not a party to the suit, such third person may, on intervening and on a *prima facie* showing of some title to said property, have the same restored to him, until the final determination of the suit, on executing a *forthcoming bond* in the same manner and amount, within the same delay, and with the same effect as if he were a defendant.

It is clear that the legislature in passing such an Act had some object in view, which was: either to create a right which did not previously exist, or to regulate one, the exercise of which necessitated some legislation, either by enlargement or restriction; in other words, to confer some advantage or to remedy some mischief.

The fact is, that prior to 1876, intervenors had no *legal* right to release by bonding, property attached or sequestered, although they possessed that privilege in cases of provisional seizure.

It was only by judicial sanction, that they were permitted to do so. 18 L. 57; 1 R. 278; 10 L. 108; 14 An. 53; 16 An. 126, 25.

Such rights ceased to be recognized by the Court organized under the Constitution of 1868, which held: that the defendant and the plaintiff alone had a right to bond; that no law authorized an intervenor to bond,

and that his bond thus taken was not a judicial bond. 20 An. 29; 22 An. 535; 28 An. 244.

It was under that condition of things, in the month of March, when the last decision appears to have been rendered, that the legislature adopted Act 51, which took effect from and after its passage.

The object of that Act was, as stated, to give to intervenors the right to bond and to prescribe the character of the bond.

It is characteristic of that Act, that it terms the bond to be furnished a *forthcoming* bond, the purpose of which was " to have restored to the intervenor the property seized, until the final determination of the suit."

Prior to that Act, an intervenor, in cases of provisional seizure, had a right to bond, where the defendant had not done so, and to obtain the release of the property, which was to be left in his possession, with the condition that he would satisfy such judgment as may be rendered against him *or* return the property, *whatever it was*. C. P. Art. 289, § 4. The lessee was likewise recognized the right to release on furnishing a *forthcoming* bond, for an amount equal to the value of the property to be left in his possession, *or* for the amount of the claim.

The obvious purpose contemplated was to place intervenors, in cases of attachment and sequestration, on a footing of equality with intervenors in cases of provisional seizure, and in no way in *duriori casu*. The Act includes the latter. Indeed, if an intervenor in a case of provisional seizure could release the property on a *forthcoming* bond, without making himself responsible in the least for the judgment to be rendered against the defendant, and have himself discharged on surrendering the property entrusted to him, there was no good reason why an intervenor, in a case of attachment or of sequestration, should not be equally benefitted. The intervenor in possession is a plaintiff, and not a defendant. Hence it is, that the Act uses the words, that the third party intervening may have the property seized " *restored to him, until the final determination of the suit, on executing a forthcoming bond.*" The term forthcoming characterizes the obligation as being one for the delivery, at a certain time, of the property restored to him and which is to remain conditionally in his possession until the final determination of the suit.

The bond on which the plaintiff sues contains the formal stipulation that if F. W. & Co. and S., or their said security, do not send away the said property, etc., and do faithfully present the same after definitive judgment, in case they should be decreed to restore the same to the plaintiff, then this bond to be null and void, otherwise, etc.

It is evident that the tenor of the bond is that of a *forthcoming* bond.

If the plaintiff, who knew of the form in which it was drawn up, was not satisfied with it, he should have prosecuted, and not discontinued, his rule against the sheriff, or should have stayed the execution of the order, or reinstated the attachment seizure, or taken some step of conservation, which he failed completely to do.

But it is claimed that the condition of the bond, authorized by the Act 51 of 1876, is to be the same as is to be embodied in that which a defendant, in the cases provided for, is required to give when he seeks to release the property. C. P. 259.

The Act does not say so. It merely provides that the intervenor shall execute a forthcoming bond, in the same manner and amount, within the same delay and with the same effect as a defendant. It does not say *with the same condition*. Those words the court cannot interpolate in the law.

There exists no valid reason in law or equity to justify such a construction. Why, indeed, should an intervenor, who seeks the release from seizure of property attached or sequestered in his possession and to which he claims some title, be made liable for the amount of the judgment, if any, to be rendered in the case? Is there any justice in making such intervenor responsible in that manner and to that extent merely because he retains possession of the property seized, to which he claims some title? We can see none. His obligation should be and is, at worst, solely to surrender the property at the determination of the suit and put things in *statu quo*.

But even if the construction claimed was to be put, the question would still remain: whether the intervenor, furnishing such a bond, with such conditions as are required from a defendant, can be bound to satisfy a judgment to the value of the property, unless such judgment has been actually rendered *against him*.

In such a contingency the defendants could not be held, as no money judgment was rendered in the case against them. Their intervention in the previous case was simply rejected, and the property attached and restored to them was declared to belong to the defendant Hall.

We therefore conclude, that the bond required by Section 1 of the Act of 1876, is a *forthcoming* bond, conditioned solely for the delivery of the property restored at the determination of the suit; that the bond in question annexed to plaintiffs' petition is a bond of that character, and that the defendants cannot be held responsible under it, unless its condition has not been fulfilled.

On that subject, the evidence satisfactorily establishes (and it does not seem to be disputed) that the property delivered to the defendants on January 31, was returned by them shortly afterwards, viz: on

February 25, following, to the same sheriff who had seized it, at the same place, it never having been removed, and in the same condition, the articles consumed having been replaced by others equal in quantity and quality.

The record shows that the plaintiff was aware of the surrender, that he not only refused to allow the seizure of the property thus turned over, but had it released. It also establishes that a *fieri facias*, issued in his name, having been levied on that property, he directed the seizure to be raised and he returned the writ.

It is apparent that, if the plaintiff suffer, he has no one to blame but himself in the premises.

This view of the case renders it unnecessary to test the sufficiency of the particular reasons for which it is claimed that the rule to dissolve the attachment in the present suit was made absolute. As the plaintiff has not shown a case in which he is entitled to recover from the defendants, the dissolution of the attachment for that reason, at least, must remain.

For the same reason, we are relieved from the necessity of passing upon the correctness of the judgment, in so far as it awards a priority to another party as a privileged creditor of the defendants.

It is, therefore, ordered and decreed that the judgment appealed from be affirmed, so far only as it dissolves the attachment in this case, and that it be annulled and reversed in other respects.

It is now ordered, adjudged and decreed that the demand of plaintiff be rejected, with judgment in favor of the defendants, with costs in both Courts.